UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ESTATE OF CHASE BROOKS, by and through KAREN BROOKS, Personal Representative, KAREN BROOKS ; MARK V. GAECHTER; AND REED GAECHTER,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF SPRINGFIELD; OFFICER ERIC PARDEE (BADGE 324); OFFICER ANTHONY DELCASTILLO (BADGE 318);<br><br>    Defendants. | Case No. 6:22-cv-00399-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Plaintiffs filed this lawsuit for civil rights violations under 42 U.S.C. § 1983 ("Section 1983") and tort claims under Oregon state law. Defendants are the City of Springfield as well as Officers Pardee and Del Castillo. Before the Court is Defendants' Motion for Summary Judgment. ECF No. 45. For the reasons below, Defendants' motion is granted.

### BACKGROUND

This case arises out of a March 14, 2020 police shooting and killing of Chase Brooks in the parking lot of a Best Buy store in Springfield, Oregon. Plaintiffs are the Estate of Chase Brooks, Mr. Brooks' mother, step-father, and brother. Below is a summary of the video

documenting the shooting and its preceding events as well as Defendants Pardee and Del Castillo's testimony.

I.   **Video of Shooting**

The shooting and events preceding it were captured on a security camera located above the main front doors of the nearby Best Buy store. Pls.' Ex. 6 at 7, ECF No. 57-9.[1] The footage shows Mr. Brooks attempting to break, pull, and pry open the front windshield of a white pickup truck—later identified as his own vehicle—with a wrench and then a metal bar, which the parties here have termed a "tire iron." Defs.' Ex. 1 at 00:35-02:38, ECF No. 61. Mr. Brooks then jogged towards another vehicle in the parking lot. *Id.* at 02:38-03:01. Mr. Brooks appeared to engage in an extended conversation with the occupant of that vehicle, a Honda sedan. *Id.* at 03:01-07:15. Mr. Brooks was often bent down close to the front windows of the vehicle, and at several points struck, jabbed, or mimed striking/jabbing at the vehicle and its occupant. *Id*.

After several minutes, Mr. Brooks began walking away from the Honda, walking around the back end of a large yellow truck. He then moved quickly towards Defendant Pardee's police cruiser, which had arrived while Mr. Brooks engaged with the individual in the Honda sedan. *Id.* at 07:22. As Mr. Brooks approached, Defendant Pardee—standing outside his cruiser near the rear driver-side back door—began raising his weapon and assumed a shooting stance. *Id.* at 07:26. Mr. Brooks slowed from a run to a brisk walk. *Id.* at 07:26-07:27. Mr. Brooks was still advancing on Defendant Pardee, tire iron in hand, at a rapid pace. *Id.* at 07:26-07:28. Defendant Brooks fired three shots at Mr. Brooks. *Id.* at 07:28- 07:29. From the time Mr. Brooks began

---

[1] The video does not contain time stamps indicating the actual time. Thus, the citations to the video in this opinion are to the time in the video submitted to the Court, which runs from 00:00 minutes to 13:08 minutes.

running towards Defendant Pardee and the time he was shot, only six to seven seconds elapsed. Mr. Brooks died of his injuries.

## II.     Defendants Pardee and Del Castillo's Actions

When Defendant Officers Pardee and Del Castillo arrived on scene, Mr. Brooks was not in view. Pls.' Ex. 5 at 30:12-17, ECF No. 57-8. Defendant Pardee testified that he saw Mr. Brooks come out from a truck. Pls.' Ex. 1 at 119:12-18, ECF No. 57-5. He understood that Mr. Brooks had "already threatened someone" and that he was still armed with a tire iron. *Id.*

Defendant Pardee testified that in a "matter of moments," Mr. Brooks' aggression was directed at him and Mr. Brooks was charging. Defs.' Ex. 2 at 95:9-15, ECF No. 46-2. He testified that he attempted to de-escalate Mr. Brooks' perceived aggression by pointing his firearm at him. *Id.* at 67:8-9. Defendant Pardee stated that he did not have a different course available in the "split seconds" he had to respond to Mr. Brooks' charge. *Id.* at 67:21-68:5.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

Defendants seek summary judgment in their favor on the federal claims asserted against them. The Court first addresses Plaintiffs' federal claims against individual Defendants Pardee and Del Castillo, and then turns to Plaintiffs' federal claim against Defendant City of Eugene. Finally, the Court addresses its retention of supplemental jurisdiction over Plaintiffs' state law claims.

**I.     Section 1983 Claims Against Defendants Pardee and Del Castillo**

Plaintiffs assert several Section 1983 claims against Defendants Pardee and Del Castillo, alleging excessive use of force in violation of Mr. Brooks' Fourth Amendment rights and a violation of his Fourteenth Amendment rights to familial association (First and Fourth Claims for Relief). Defendants move against these claims both on their merits and on the basis of qualified immunity. For the reasons explained below, Defendants Pardee and Del Castillo[2] are entitled to summary judgment against Plaintiffs' First and Fourth Claims for relief on the basis of qualified immunity.[3]

---

[2] Although Plaintiffs conceded Defendants' motion as to the Fourth Amendment claim against Defendant Del Castillo, Pls. Resp. 10, the Fourteenth Amendment claim against him remains.

[3] Plaintiffs assert that Defendant Pardee has "conced[ed]" that his use of force was excessive because he did not move for summary judgment on that issue. Pls.' Resp. 22. But the failure of a party to move for summary judgment on an issue does not equate to a concession on the merits

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). The purpose of qualified immunity is to "strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Once a defendant pleads qualified immunity, the burden is on the plaintiff to prove these elements. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Courts have discretion as to which element to address first. *See Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015) ("If indeed the…officers did not violate clearly established law, then we can determine that qualified immunity is appropriate and may thus dispose of the case without undertaking an analysis of whether a constitutional

---

of that claim; rather, the effect of such an omission is to reserve the issue for trial. In any event, Defendants' motion turns on whether the law at issue was clearly established, not whether Defendant Pardee did in fact violate Mr. Brooks' rights.

Page 5 — OPINION AND ORDER

violation occurred in the first instance"). Here, the Court addresses the second element first, and finds that the rights at issue were not clearly established in this case.

The Supreme Court has emphasized that the asserted right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]' " It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted). In other words, while qualified immunity does not require "a case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The specificity of the clearly established law is "especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation, quotation, and alterations omitted).

In response to Defendants' motion on the issue of qualified immunity, Plaintiffs first cite a May 20, 2024 decision from the U.S. District Court for the Southern District of Mississippi, *Green v. Thomas*, 2024 WL 2269133 (S.D. Miss. May 20, 2024). That case provides a thoughtful and compelling history of qualified immunity. *Id.* at *1. But as that case itself acknowledges,

"qualified immunity is the law of the land." *Id*. at *19. The Court cannot depart from binding precedent.

As noted above, it is Plaintiffs' burden to prove that the Fourth and Fourteenth Amendment rights at issue were clearly established at the time of the alleged conduct. *See Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) ("it is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established) (internal quotation omitted). Here, Plaintiffs emphasize Ninth Circuit and Supreme Court precedent establishing that "officials can still be on notice that their conduct violates established law even in novel factual circumstances" and that "[i]f qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos*, 661 F.3d at 442 (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). But that same case law also cautions that application of the doctrine must "allow 'for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* at 442 (quoting *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865).

Here, a review of the video of the incident at issue supports that this is exactly the kind of "split-second judgment" in the face of "tense, uncertain, and rapidly evolving" circumstances in which qualified immunity is appropriate. The behavior and body language of Mr. Brooks would appear aggressive to the reasonable person; other than slowing his pace from a run to a brisk walk, Mr. Brooks does not appear to respond to Defendant Pardee raising his weapon and warning him to stop. From Defendant Pardee's perspective, an individual who he understood to

have been recently threatening others with a tire iron was rapidly approaching him with that same tire iron, refusing to stop even after being warned and faced with a raised firearm.

Plaintiffs have failed to identify a case clearly establishing that every reasonable official would understand that they were violating Mr. Brooks' rights under these circumstances. Instead, Plaintiffs generally explain the elements necessary to establish excessive use of force but provide no analysis of factual similarities between this case and any of those cited. Indeed, the cases bear little to no factual resemblance to this case and provide no basis to conclude that the rights at issue were clearly established. Because Plaintiffs cannot identify that the rights allegedly violated were clearly established, the Court declines to address whether there is a genuine issue of fact as to the violation of Mr. Brooks' rights in the first instance. Accordingly, Defendants Pardee and Del Castillo are entitled to qualified immunity and are granted summary judgment on Plaintiffs' Section 1983 claims against them.

## II.    *Monell* Claim Against Defendant City of Springfield

Defendants move for summary judgment against Plaintiffs' claim for municipal liability under Section 1983 against Defendant City of Springfield (Second Claim for Relief). In certain circumstances, a municipality may be held liable as a "person" under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Liability only attaches where the municipality itself causes the constitutional violation through the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see also Gillette v. Delmore,* 979 F.2d 1342, 1347 (9th Cir.

1992) ("[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability") (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988)).

There are three methods by which a plaintiff may establish municipal liability under *Monell*. First, a local government may be liable where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[s] the injury." *Rodriguez v. City of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *Monell*, 436 U.S. at 694). Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [government entity] can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

Plaintiffs' *Monell* theory is that Defendant City of Springfield had "a policy and practice of allowing excessive force to the point of lethal force without any serious repercussions or investigations." Pl. Resp. 11-12. In support of their theory, Plaintiffs identify two prior investigations of shootings which they allege were inadequate. For the reasons below, these two incidents are insufficient to create a genuine issue of material fact as to Defendant City of Springfield's alleged policy or practice of inadequate investigation.

If a policy has not been written or formalized, a local government may still be liable if it has an implicit policy that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. Cty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 168, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). To establish municipal liability for an implicit custom, "isolated or sporadic incidents" are not enough, rather, liability "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Gordon*, 6 F.4th at 974 (citation omitted).

For example, in *Larez v. City of Los Angeles*, the plaintiffs sued the City of Los Angeles following an allegedly unconstitutional search of their home executed by excessive force by the LAPD. 946 F.2d 630, 634 (1991). The plaintiffs alleged "inadequate citizen complaint procedures which have the effect of encouraging the excessive use of force." *Id.* at 635. At trial, plaintiffs called an expert in police procedures and policies who testified about a two-year study he had conducted into LAPD complaints and investigations. *Id*. From that investigation, the expert concluded that it was "almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen." *Id*. On appeal following a jury verdict in the plaintiffs' favor, the Ninth Circuit explained that "[t]he jury was entitled to conclude that [the expert's testimony] supported the [plaintiffs'] theory that the LAPD's disciplinary and complaint processes, executed by policy or custom, contributed to the police excesses complained of because the procedures made clear to officers that, at least in the absence of independent, third-party witnesses, they could get away with anything." *Id.* at 647.

Unlike in *Larez*, Plaintiffs here provide no expert testimony as to a policy or practice of inadequate investigations that might allow a jury to conclude that such inadequacies "made clear

to officers that, at least in the absence of independent, third-party witnesses, they could get away with anything." *Id.* at 647. Instead, Plaintiff provides evidence related to two other officer-involved shootings, as well as expert testimony regarding the Chase Brooks investigation itself. But as explained above, isolated or sporadic incidents are insufficient to establish a policy or practice of deliberate indifference to unconstitutional use of excessive force.

Plaintiff first identifies a third-party review of the 2019 officer-involved shooting of Stacy Kenny. *See* Pls.' Ex. 10, ECF No. 57-13; Ex. 11, ECF No. 57-14. But that review noted that "the current investigative and review structures have the capability to accomplish both a thorough and objective factual record and a robust, constructive review." Pls.' Ex. 10 at 3. Instead, the report concluded the specific investigation at issue was deficient. Neither the report nor the addendum discusses any other investigation besides the one into the Kenny shooting, and they do not analyze or opine on whether other investigations into other officer-involved shootings have been deficient.

Plaintiffs also contend that the investigation into a prior shooting by Defendant Pardee was deficient. But even if that isolated event were sufficient raise a genuine issue of material fact on Plaintiffs' inadequate investigation theory, Plaintiffs have presented no evidence that the investigation was indeed deficient. Rather, Plaintiffs provide deposition testimony from Defendant Pardee that Plaintiffs contend shows that Defendant Pardee could not recall where the individual's hands were when Defendant Pardee shot him. From this testimony alone, Plaintiffs contend that "had the City done its job by conducting an in depth investigation into the shooting death of Pardee's first unarmed man back then, they likely would have prevented the shooting death of an unarmed man in this incident." Pls.' Resp. 13. Equivocal deposition testimony about certain specific details about Defendant Pardee's prior shooting does not permit an inference

Page 11 — OPINION AND ORDER

about the adequacy of its investigation. Indeed, there is no evidence about the investigation in the summary judgment record at all.

Finally, Plaintiffs present a report from their expert Scott McKee regarding the Chase Brooks shooting and investigation. Pls.' Ex. 6. Like the Kenny report that identified deficiencies specific to that investigation, Mr. McKee's report identifies deficiencies in the investigation of the Chase Brooks shooting. But also like the Kenny report, it provides opinion as to a widespread practice of similarly deficient investigations. Moreover, as it post-dated the Chase Brooks shooting, it is of minimal relevance to showing, as in *Larez*, that investigative procedures "made clear to officers that, at least in the absence of independent, third-party witnesses, they could get away with anything." 946 F.2d at 647.

In sum, these isolated incidents—especially considering the lack of expert testimony regarding the City of Springfield's investigation deficiencies more broadly—do not create a genuine issue of material fact that Defendant City of Springfield had a custom or policy of failing to investigate officer-involved shootings such that it amounted to deliberate indifference to the risk of excessive use of force in violation of the Fourth Amendment. Defendants are therefore entitled to summary judgment on Plaintiffs' *Monell* claim.

### III. Plaintiffs' State Law Claims

Defendants' motion does not seek summary judgment nor otherwise address Plaintiffs' state law wrongful death and negligence claims (Third and Fifth Claims for Relief). However, in light of the elimination of federal claims from this case, the Court addresses its jurisdiction over the remaining state law claims. "A district court's decision whether to exercise [supplemental subject-matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28

U.S.C §§ 1367(a), (c)). The Court's decision regarding the exercise of its discretion to exercise supplemental jurisdiction "is informed by the…values "of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.) (citations and quotations omitted).

Here, this case has been pending before the Court for more than two and a half years. It has presided over all aspects of this case. The Court is familiar with the facts and issues in this case. Additionally, this case does not raise novel issues of state law. The Court finds that the values of judicial economy, convenience, fairness, and comity weigh strongly in favor of retaining jurisdiction. Accordingly, the Court exercises its discretion to retain supplemental jurisdiction over the remaining state law claims.

## CONCLUSION

For the reasons above, Defendants' Motion for Summary Judgment (ECF No. 45) is GRANTED. Summary judgment is granted in favor of Defendants and Plaintiffs' First, Second, and Fourth Claims for Relief. The Court retains jurisdiction over Plaintiffs' remaining state law claims.

DATED this  27th  day of    December   , 2024.

/s/Mustafa T. Kasubhai

Mustafa T. Kasubhai (he/him)
United States District Judge